# CONNECTYX

## DECLARATION OF JON PEVZNER

I, Jon Pevzner, hereby state that the following facts are true and correct, under penalty of perjury:

1. My name is Jon Pevzner. I am over the age of eighteen years, and have personal knowledge of the facts set forth herein.

2. I am Co-Founder and President of Connectyx Technologies, Corp. ("Connectyx"). Connectyx specializes in end-to-end business process outsourcing solutions for the healthcare industry, with a focus on reducing and managing the costs of healthcare administration and continuous business process improvements. Our flagship product is a unique consumer healthcare wellness program branded as MedFlash. Medflash is an electronic personal health management (ePHM) platform which empowers consumers to take control of their personal health and wellness information.

3. In 2011 Connectyx was in the process of negotiating a national celebrity marketing contract for MedFlash with Joan Lunden, a former Good Morning America host. Ms. Lunden embraced the product, and she agreed to be engaged as a spokesperson for Connectyx contingent upon adequate funding and cash flow. The MedFlash/Lunden contract was contingent upon the company's financial ability to roll out a national advertising campaign with her endorsement.

4. At this time Connectyx was pursuing ongoing investment opportunities while still recovering from the recession in 2008. Due to the market volatility, raising capital was more difficult because Connectyx was still considered a startup which was high risk to



49 SW Flagler Ave Suite 302, Stuart, FL 34994
800-526-8006 – Fax 866-900-1002 – www.connectyx.com

# C⦿NNECTYX

many investors. Around that time Mr. Schuman was contacted by Barry Hawk, and attorney and financial advisor, who introduced Mr. Schuman to an investment opportunity with a Hedge Fund in Boston, known as SeaFin Capital.

5. Mr. Schuman discussed the SeaFin opportunity with the senior management team as he had completed his due diligence with Mr. Hawk on SeaFin. Mr. Schuman travelled to Boston where, along with Mr. Hawk, he met with a SeaFin representative. Afterwards Mr. Schuman presented the funding offer to the Connectyx Board and myself. We also advised Ms. Lunden's representatives of the possibility of Connectyx obtaining funding from SeaFin, and her advisors also conducted due diligence on SeaFin.

6. All proceeds that Connectyx received from SeaFin Capital went to Connectyx; Mr. Schuman did not receive any of the money that came from this transaction.

7. I have worked with Mr. Schuman on an executive level at three organizations over the past twenty years and he has always conducted business with the highest level of integrity and trust. When he confided in me last summer concerning what had really transpired with SeaFin, I was shocked that he had jeopardized his career, the company and his family over a single funding opportunity. In retrospect, although Ronald had clearly broken the law, I know that he only had the company's best interest in mind and had no intention of personal gain.

8. I am aware that one of the issues in Mr. Schuman's case involves the valuation of the Connectyx shares purchased by SeaFin. In that regard, I have reviewed the spreadsheet that is attached as Exhibit A.

---

49 SW Flagler Ave Suite 302, Stuart, FL 34994
800-526-8006 – Fax 866-900-1002 – www.connectyx.com



# CONNECTYX

9. I am familiar with the transactions described in the spreadsheet, and the figures contained in the spreadsheet are accurate. As indicated, the spreadsheet reflects sales of restricted Connectyx stock sold during 2011-2012.

10. The sold stock reflected on the spreadsheet is essentially the same stock sold to SeaFin.

11. As the spreadsheet reflects, the average price paid for the restricted shares was $0.005.

12. These sales, with the exception of one, were all arm's length transactions with outsiders. The only sale that is not is the second transaction involving Mr. Danzig (dated 7/20/11). Mr. Danzig had performed some consulting services for Connectyx and charged $2,000 for those services. He agreed to accept shares in payment of that invoice.

13. Other than this Danzig transaction, none of the persons listed on the spreadsheet are insiders of Connectyx or have any involvement in the company except for their purchase of shares.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 23, 2015.

Jon Pevzner
President & CEO

# Sales of Restricted Shares of Connectyx Stock

| Date | Name | Price Per Share | Shares | Purchase Price | Warrants | Warrants Exercised? |
|---|---|---|---|---|---|---|
| 07/06/11 | Danzig | 0.002 | 1,000,000 | $ 2,000 | - | |
| 07/20/11 | Danzig | 0.005 | 400,000 | $ 2,000 | - | |
| 07/05/11 | Bardelas | 0.003 | 3,000,000 | $ 10,000 | 500,000 | No |
| 07/12/11 | Bardelas | 0.004 | 5,000,000 | $ 20,000 | 500,000 | No |
| 07/14/11 | McClelland | 0.004 | 2,500,000 | $ 10,000 | - | |
| 07/28/11 | McClelland | 0.004 | 2,500,000 | $ 20,000 | - | |
| 08/08/11 | Feucth | 0.004 | 2,727,273 | $ 12,000 | - | |
| 08/08/11 | Atkins | 0.005 | 2,000,000 | $ 10,000 | 1,400,000 | No |
| 08/12/11 | Grooms | 0.004 | 1,250,000 | $ 5,000 | - | |
| 08/15/11 | Robinson | 0.005 | 4,200,000 | $ 20,000 | 500,000 | No |
| 08/16/11 | Atkins | 0.005 | 1,000,000 | $ 5,000 | | |
| 08/18/11 | Millard | 0.005 | 400,000 | $ 2,000 | | |
| 08/23/11 | Rapo | 0.005 | 1,000,000 | $ 5,000 | | |
| 08/25/11 | Leighton | 0.005 | 500,000 | $ 2,500 | | |
| 09/03/11 | Briscoe | 0.005 | 500,000 | $ 2,500 | | |
| 09/09/11 | Evers | 0.005 | 2,000,000 | $ 10,000 | 250,000 | No |
| 09/09/11 | Kavanagh | 0.005 | 2,000,000 | $ 10,000 | | |
| 09/13/11 | Briscoe | 0.005 | 1,500,000 | $ 7,500 | 250,000 | No |
| 09/19/11 | Bardelas | 0.004 | 5,000,000 | $ 20,000 | | |
| 10/03/11 | Wilson | 0.005 | 1,000,000 | $ 5,000 | 250,000 | No |
| 10/03/11 | Tomko | 0.005 | 1,000,000 | $ 5,000 | 250,000 | No |
| 10/19/11 | Wilson | 0.005 | 1,000,000 | $ 5,000 | 250,000 | |
| 11/03/11 | Tomko | 0.005 | 1,000,000 | $ 5,000 | | |
| 11/15/11 | Merz | 0.005 | 1,000,000 | $ 5,000 | 125,000 | No |
| 12/15/11 | Bernard | 0.005 | 1,000,000 | $ 5,000 | 250,000 | No |
| 12/19/11 | Bernard | 0.005 | 1,000,000 | $ 5,000 | 250,000 | No |
| 12/16/11 | Bardelas | 0.004 | 2,500,000 | $ 10,000 | | |
| 12/16/11 | Rearick | 0.005 | 2,000,000 | $ 10,000 | 250,000 | No |
| 12/20/11 | Brenann | 0.005 | 600,000 | $ 3,000 | | |
| 01/13/12 | Bardelas | 0.003 | 4,000,000 | $ 10,000 | - | |
| | Total | | 53,577,273 | $ 241,500 | 5,025,000 | |

EXHIBIT A