Barry A. Ginsberg, O.D.
3601 NW 24 Avenue
Boca Raton, FL 33431

United States District Court Judge Mark L. Wolf
District of Massachusetts
1 Courthouse Way
Boston, Massachusetts 02210

November 18, 2015

      Re: Ronald Lawrence Schuman

Dear Judge Wolf,

I am writing this letter as a character reference on behalf of Ronald Schuman whom I have known for the past five years both as a significant investor in and advisor to Connectyx Technologies Corp of which he was the founder and CEO. I am also his family Optometrist. Connectyx (CTYX) is a public company whose main product, PHR, is mandated by the Affordable HealthCare Act.

By way of background, I was born in 1956 as the only child of immigrant parents who were also Holocaust survivors. I received my Bachelor's degree from Yeshiva University in New York and my Doctorate from Pennsylvania College of Optometry in Philadelphia. My experience investing in small microcap companies has been extensive for over twenty years, which have been high-risk reward scenarios. Almost every time an investment failed, it was due to a company diluting the shareholder base by raising capital from non-traditional sources creating a death spiral in the issuer share price. Financiers always seemed to get at least a 50% discount for purchasing equity in the company and always had downside protection when the share price declined. Even with SEC reporting companies and full disclosure, shareholders usually lost their whole investment since by the time they read the SEC filings, the share price had already been decimated by these financial vultures.

As a major investor in the company at issue in Mr. Schuman's case, although the transaction Ronald Schuman agreed to participate in violated the law, it was done to **benefit** and **not to harm** shareholders in Connectyx Technologies. It was **not** for Ronald's personal gain. Being a major shareholder, I was made aware (summer 2011) that a Hedge Fund (which ultimately turned out to be an FBI front) thoroughly reviewed the **CTYX** business plan and wanted to invest in the company. My first concern was potential dilution of my own position and of other shareholders because many of my friends and colleagues were also investors. Ronald explained that the Hedge Fund would be buying restricted stock at a premium to share price and would continue to do so periodically. I was impressed and excited about finally learning of a transaction that would not dilute shareholders to the downside and also not come back to market on the sell side for at least two years. Ronald informed me that his attorney/investment banker introduced him to the Hedge Fund and told Ronald that a hefty 50% consulting fee was required. As I stated earlier, it is not uncommon for microcap companies to raise funds at 50% discount to market which hurts shareholders when the financiers sell. In contrast, the transaction Mr. Schuman entered into was completely the opposite and extremely beneficial to shareholders because the 50% discount fee was in cash as opposed to diluting stock and had no negative impact on share price. On the contrary, the CTYX share price would probably rise once the company was fully funded by the Hedge Fund. The CTYX Board of Directors gave Mr. Schuman approval to proceed with the transaction.

EXHIBIT

C

On a subsequent trip (October 2011) to New York City, as a guest of CTYX, I met with Joan Lunden, formerly of Good Morning America, who wanted to engage in a joint venture with CTYX. Prior to that meeting I met with the CTYX attorney/investment banker representing the company in the joint venture who also introduced Mr. Schuman to the Hedge Fund and coincidently we had attended the same undergraduate school, Yeshiva University. I questioned him extensively on how the Hedge Fund could still make money considering they were buying CTYX at a premium and someone was getting a 50% consulting fee. He explained to me that Hedge Funds were very sophisticated and they have counter investments to "hedge" and that is why they are called a Hedge Fund. I told him it sounded too good to be true and he said he had other clients that are currently being funded and things were going smoothly. I told him that I invested in small startup companies and one of the biggest hurdles was raising capital. He welcomed any referrals I might give him but, fortunately I read (December 2011) about a previous FBI sting operation in Boston before actively going further. Upon this discovery, I notified Mr. Schuman and he suddenly realized that this was a similar situation that he participated in a few months back. Rather than accuse others or try to hide his own complicity, my understanding is that Mr. Schuman affirmatively came forward, identified himself to law enforcement authorities as having been involved in this transaction, and has taken appropriate steps to accept responsibility for his actions.

In my opinion, the sting operation would have entrapped almost every CEO on the OTC market if it would have continued without publication of an earlier case. Unfortunately, the capital markets have dried up in recent years and CEOs of microcap companies have no choice but to resort to alternative financing, whether its dilutive death spiral or falling for illegal activities by individuals who hold themselves out as fundraising experts. Although I do not condone violation of the law, I think that Mr. Schuman now finds himself in a bad situation although his intentions were good. He was not trying to enrich himself, and was motivated by loyalty to the company and its employees and stockholders rather than greed or personal gain.

Ronald Schuman is an honorable individual and for him to knowingly engage in criminal conduct is totally out of character. He is a charitable individual who coordinates and actually personally cooks in a soup kitchen for the homeless through his Synagogue on an ongoing basis. He has served as President of his Synagogue and shared with me a moving and reflective address he made during a recent Yom Kippur service. Through Ronald's misguided actions he only had the company and its shareholders' best interests at heart. He went into the subject transaction with the guidance of his attorney/investment banker. Ronald does not take a salary as CEO of CTYX, and has deferred his income for the betterment of the company. In all my years of investment experience I have never met a more ethical and hardworking CEO than Ronald Schuman.

With all due respect, I beseech you to have mercy on Ronald who is depended on by many people in the community. He takes care of his wife who has chronic heart disease and has had many life threatening episodes in the past few years. He also has to meet the needs of a mentally ill grownup son. He is a good son who lives up to "Honor thy Father and Mother" by caring for his elderly parents. Lastly, he represents hundreds if not thousands of shareholders in Connectyx Technologies who are financially counting on him to continue to make their company grow successfully. Incarceration would be extremely detrimental to Ronald and the people who depend on him.

Thank you for your time and consideration.

Sincerely,

Barry A. Ginsberg, O.D.