**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 75082 / June 1, 2015

**ADMINISTRATIVE PROCEEDING**
File No. 3-16566

| | |
|---|---|
| **In the Matter of**<br><br>**RONALD LAWRENCE SCHUMAN,**<br><br>**Respondent.** | **ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Ronald Lawrence Schuman ("Schuman" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") that the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, Respondent admits the Commission's jurisdiction over him and the subject matter of these proceedings, and consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds[1] that:

---
[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

EXHIBIT D

## Summary

These proceedings arise out of a fraudulent scheme in which insiders of publicly-traded penny stock companies paid secret kickbacks to a purported corrupt hedge fund manager, who was in fact an undercover agent with the Federal Bureau of Investigation ("Fund Manager"), in exchange for the Fund Manager's purchase of restricted stock of the penny stock companies on behalf of his purported hedge fund ("the Fund"), which did not actually exist.

## Respondent

1. Respondent, age 59, of Palm City, Florida was the President and Chief Executive Officer of Connectyx Technologies Corp. ("Connectyx"), a publicly traded company. Respondent participated in an offering of Connectyx stock, which is a penny stock. Respondent was charged with one count of conspiracy to commit wire fraud on February 27, 2014 and pleaded guilty to that charge on May 20, 2014 in *U.S. v. Schuman*, 14-CR-10053-MLW (D. Mass.).

## Other Relevant Entities and Individuals

2. Connectyx Technologies Corp. is a Florida corporation with its principal place of business in Palm City, Florida. Connectyx is in the business of providing medical technologies and supplies. Its stock is publicly quoted on Pink OTC Markets, Inc. under the symbol "CTYX."

3. Barry Hawk ("Hawk"), age 46, a resident of Woodmere, New York, was the Managing Director of Status Equities LLC and was purportedly in the business of bringing private companies public and assisting public companies in finding sources of funding. He was also the President and Chief Executive Officer of Arctic Enterprises, Inc. and Strategic Rare Earth Metals, Inc. Hawk was charged with one count of wire fraud on July 7, 2014 and pleaded guilty to that charge on December 2, 2014 in *U.S. v. Hawk*, 14-CR-10199-MLW (D. Mass.).

## Background

4. At some time prior to September 14, 2011, Hawk arranged for Schuman to meet with the Fund Manager to discuss funding for Connectyx. On or about September 12, 2011, Schuman, Hawk, and an individual who was serving as a cooperating witness for the Federal Bureau of Investigation ("CW") participated in a telephone conference call, during which they discussed the possibility of the Fund Manager's investing Fund monies in Connectyx in exchange for a secret fifty percent kickback of the invested monies.

5. On or about September 14, 2011, Schuman and Hawk met with the Fund Manager and CW (the "September 14 Meeting"). The Fund Manager explained to Schuman and Hawk that the Fund Manager was prepared to invest Fund monies of up to $5 million in Connectyx in exchange for a secret fifty percent kickback to the Fund Manager, enabling the Fund Manager to pocket half of the money he was supposedly investing on behalf of the Fund. Schuman and Hawk were informed that the Fund was not to be told of the kickback.

6. At the September 14 Meeting, the Fund Manager also explained the mechanics of the funding, informing Schuman and Hawk that while the Fund Manager could commit to an investment of $5 million of the Fund's money with $2.5 million being kicked back to the Fund Manager, the Fund Manager would not invest the entire amount at once. The Fund Manager told Schuman and Hawk that he would invest the money over time in tranches, or installments, of increasing amounts.

7. At the September 14 Meeting, the Fund Manager further discussed with Schuman and Hawk the mechanics of how monies would be kicked back to the Fund Manager. The Fund Manager arranged with Schuman that Connectyx would execute a consulting agreement with one or more nominee consulting companies that the Fund Manager purportedly controlled, but that the Fund Manager would not actually provide any consulting services. Schuman and Hawk were told that invoices would be issued by the Fund Manager's nominee company to Connectyx in order to disguise the kickbacks. At the September 14 Meeting, Schuman agreed to the kickback arrangement.

8. On various dates between on or about September 14, 2011 and in or about November 2011, Schuman sent the Fund Manager documents related to the kickback transaction, including a fraudulent consulting agreement between Connectyx and the Fund Manager's nominee consulting company and a stock purchase agreement between Connectyx and the Fund.

9. On or about September 20, 2011, in accordance with wiring instructions provided by Schuman, $15,000 was sent by wire transfer from a bank account maintained in Boston, Massachusetts purportedly belonging to the Fund to a Connectyx corporate bank account outside of Massachusetts. This wire transfer represented the first tranche of funding to Connectyx.

10. On or about September 20, 2011, Schuman caused $7,500 to be sent by wire transfer from a Connectyx corporate bank account outside of Massachusetts to a bank account maintained in Boston, Massachusetts purportedly belonging to one of the Fund Manager's nominee companies. This wire transfer represented Schuman's kickback to the Fund Manager from the first tranche of funding to Connectyx.

11. On or about September 21, 2011, Schuman caused a stock certificate representing the purchase by the Fund of 500,000 Connectyx shares to be sent to the Fund Manager.

12. On or about October 11, 2011, in accordance with wiring instructions provided by Schuman, $30,000 was sent by wire transfer from a bank account maintained in Boston, Massachusetts purportedly belonging to the Fund to a Connectyx corporate bank account outside of Massachusetts. This wire transfer represented the second tranche of funding to Connectyx.

13. On or about October 12 and 14, 2011, Schuman caused two wire transfers of $7,500 each to be sent from a Connectyx corporate bank account outside of Massachusetts to a

bank account maintained in Boston, Massachusetts purportedly belonging to one of the Fund Manager's nominee companies. These two wire transfers represented Schuman's $15,000 kickback to the Fund Manager from the second tranche of funding to Connectyx.

14. On or about October 12, 2011, Schuman caused a stock certificate representing the purchase by the Fund of 600,000 Connectyx shares to be sent to the Fund Manager.

15. As a result of the conduct described above, Schuman willfully violated Section 10(b) of the Exchange Act and Rule 10b-5(a) thereunder, which prohibit fraudulent conduct in connection with the purchase or sale of securities.

### IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent Schuman's Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, it is hereby ORDERED that:

A. Respondent Schuman shall cease and desist from committing or causing any violations and any future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

B. Respondent Schuman be, and hereby is:

> prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] for a period of five (5) years from entry of this Order; and

> barred from participating in any offering of a penny stock, including: acting as a promoter, finder, consultant, agent or other person who engages in activities with a broker, dealer or issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock, with the right to apply for reentry after five (5) years to the appropriate self-regulatory organization, or if there is none, to the Commission. Any reapplication for association by the Respondent will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following: (a) any disgorgement ordered against the Respondent, whether or not the Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for

the Commission order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission order.

By the Commission.

Brent J. Fields
Secretary